IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SUPERMERCADOS ECONO,<br><br>**Plaintiff**<br><br>v.<br><br>INTEGRAND ASSURANCE COMPANY;<br>et als.<br><br>**Defendants** | **CIVIL NO.** 97-2818 (JAG) |

**OPINION AND ORDER**[1]

I. **PROCEDURAL BACKGROUND**

On December 4, 1997, plaintiff-appellant Supermercados Econo ("Econo") brought an action for losses sustained against defendants Integrand Assurance Company ("Integrand"), Colonial Insurance Agency, Inc. ("Colonial"),[2] Atlantic Cold Storage, Inc. ("Atlantic"), and Ernesto Cabezas ("Cabezas"), (collectively "defendants") pursuant to an insurance policy issued under the National Flood Insurance Act of 1986 ("NFIA"), 42 U.S.C. §§ 4001-4129. (Docket No.1). The losses sustained allegedly occurred as

---

[1]This Opinion and Order is issued in response to the First Circuit's Opinion, which vacated this Court's decision issued on February 28, 2003 and remanded the case for additional findings of fact and conclusions of law.

[2]Econo and Colonial settled their claims and partial judgment dismissing the action against Colonial was entered on July 12, 2000. (Docket No. 46).

Civil No. 97-2818                                                                 2

a result of Hurricane Hortense, which on September 10, 1996 flooded Atlantic's warehouse where Econo's merchandise was stored. Econo claimed that the merchandise was insured by Integrand under the National Flood Insurance Program ("NFIP"), and the terms and conditions of a Standard Flood Insurance Policy ("SFIP") issued by Integrand to Atlantic.

On June 24, 2002, this Court held a bench trial. At the end of trial, on June 26, the Court ordered the parties to simultaneously submit simultaneous proposed findings of fact and conclusions of law within thirty (30) days. Upon review of the testimonial and documentary evidence presented, and also pursuant to Fed.R.Civ.P. 52(a), this Court made findings of fact, conclusions of law and entered judgment in favor of defendant-appellee Integrand. Econo appealed the Court's judgment.

On July 7, 2004 the First Circuit vacated the judgment and remanded the case for this Court to make additional findings of fact and conclusions of law addressing plaintiff's claim as a loss payee beneficiary under the SFIP and defendant's claim that the policy was null and void. After additional briefings by the parties and a <u>de novo</u> review, this Court has made supplemental findings showing that Econo is not entitled to recover funds from Integrand, nor does it have an insurable interest because the issued SFIP was rendered null and void pursuant to a material misrepresentation.

In sum, the decision by this Court is that the policy is null

Civil No. 97-2818                                                    3

and void which therefore precludes Econo's claim as a loss payee beneficiary.

## II. FACTUAL BACKGROUND[3]

1. Atlantic Cold Storage, Inc. ("Atlantic") is a corporation organized pursuant to the laws of Puerto Rico ("P.R."), with its principal office in San Juan. At all times relevant to this action, Atlantic was engaged in the business of storing perishable goods: dry and frozen items in its walk-in coolers located at its warehouse facilities in the area of Bechara Industrial Park ("Bechara"), P.R. Ernesto Cabezas ("Cabezas") was Atlantic's owner, president and principal shareholder. Other shareholders were Leonel Diaz, Willy Sabina, Noel Diaz and Jorge Cabrera. Atlantic purchased the building and warehouse facilities from an entity by the name of Tampa Maid Sea Products ("Tampa Maid.")

2. Econo is a corporation organized under the laws of P.R., with its principal offices in Catano, P.R. It is engaged in the business of purchasing perishables, including dry and frozen goods for distribution to its participating-member outlets.

3. Colonial Insurance Agency ("Colonial") is a company doing business in P.R., as an insurance agency, organized pursuant to the laws of P.R. and with its principal offices in Hato Rey, P.R.

---

[3] For the sake of consistency the Court will adopt the findings of fact found pursuant to the original Opinion and Order issued by the District Court on February 28, 2003. Additionally, the Court has supplemented its findings of fact pursuant to the Remand request of the First Circuit.

Civil No. 97-2818                                                            4

Colonial is authorized by the Commissioner of Insurance of P.R. to engage in the insurance business as an insurance agency. At all times relevant to this action, Colonial was Atlantic's insurance agent. It was also the general insurance agency through which the instant flood insurance policy was issued and renewed on a yearly basis from August 1994 through 1997.

4. Integrand Assurance Company ("Integrand") is a corporation organized pursuant to the laws of P.R., with its principal office in Rio Piedras, P.R. Integrand is an insurance company authorized by the Commissioner of Insurance of P.R. to engage in the insurance business. It is a participant in the Write Your Own ("WYO") Program of the NFIP, and is an insurance or servicing agent of the NFIP. Integrand was the insurance carrier that issued the flood insurance policy covering the risk of loss of property and perishable items stored in the Bechara facility.

5. Colonial is unauthorized to issue flood insurance policies, for it cannot rate and quote the premium of the insurance. Colonial is authorized, however, to receive premium payments on behalf of Integrand. An SFIP issued by Colonial is invalid until Integrand receives payment from the insured. The renewal is therefore ineffective until Colonial sends to Integrand, and Integrand receives, the insured's payment.

6. Joseph Carn ("Carn") is Atlantic's insurance broker.

7. On July 27, 1994, Carn faxed to Colonial Atlantic's insurance application. Colonial then forwarded the application to

Civil No. 97-2818                                                                 5
Integrand.

8. On August 1, 1994, Integrand approved the application and agreed to insure Atlantic under a WYO Program of the NFIP. Coverage was in place until August 24, 1995, the date in which Atlantic had to renew the policy or let it expire.

9. On September 22, 1994, Econo requested that Cabezas, through Colonial, apply to Integrand for inclusion of Econo as an additional insured and loss payee under Atlantic's policy. Atlantic agreed to Econo's petition.

10. Atlantic delegated to Carn, its insurance broker, the request that Econo be added to Atlantic's policy as an additional insured and loss payee.

11. On September 23, 1994, Colonial received Carn's request and forwarded it to Integrand. Integrand, as a WYO Company, only required a request from the agency, the agent, or the broker on behalf of Atlantic to proceed to issue an endorsement to include Econo as an additional insured and loss payee.

12. On September 23, 1994, Integrand issued an endorsement to Atlantic's flood policy to include Econo as an additional insured and loss payee. Econo paid nothing for the endorsement and the insurance premium.

13. Integrand, in order to issue the endorsement, relied on the information that the insured and Colonial provided. Integrand had no knowledge that Econo, not Atlantic, was the sole owner of the merchandise.

14. On August 24, 1995, Atlantic renewed the policy for another year. This time, however, Atlantic requested that Colonial include Econo as a second named insured.

15. Atlantic filed for bankruptcy in 1995.

16. On November 29, 1995, through a public auction sale, the Bechara facility was transferred back to Tampa Maid. Neither Atlantic or Carn informed Integrand.

17. On October 26, 1995, a corporation named United Cold Storage, Inc. ("United") was formed and registered in the State Department of P.R. United's shareholders were Cabezas, Margarita de Jesus, Jorge Cabrera, Jorge Ochotorena. Atlantic continued to do business under United's name.

18. United leased the Bechara facility from Tampa Maid and continued to provide Econo with the same storage and delivery service that Atlantic had previously offered. United sent invoices to Econo, and Econo paid them. Cabezas continued to be the liason, under the name of United, between Econo and the insurance agent.

19. On April 29, 1996, United's president, Margarita de Jesus, bought the Bechara warehouse from former owner Tampa Maid. Integrand was not informed about the change in ownership.

20. On September 10, 1996, Hurricane Hortense hit P.R. The Hurricane's rains flooded the Bechara warehouse and damaged all the merchandise stored therein.

21. On September 11, 1996, Luis Juarbe ("Juarbe"), Econo's insurance broker, sent an employee to the Bechara warehouse to

Civil No. 97-2818                                                              7

ascertain the status of Econo's merchandise. He learned that the Hurricane's water had flooded the warehouse and damaged Econo's goods. Juarbe advised Econo to place a claim. Econo requested Juarbe to file a claim under the flood insurance policy.

22. On September 12, 1996, Integrand received a check from Colonial, dated September 5, 1996, to renew Atlantic's flood policy. The check arrived within the 30 day grace period to renew the policy.

23. On September 18, 1996, representatives from the P.R. Department of Health destroyed Econo's perishable, dry and frozen food items impounded from the Bechara facility following the Hurricane.

24. On September 18, 1996, Colonial requested Integrand to eliminate Econo from Atlantic's flood policy.

25. On September 25, 1996, Integrand renewed Atlantic's policy with Atlantic as the only named insured.

26. On November 14, 1996, Econo sent a notification to Integrand, by mail, informing Integrand of its merchandise loss. This informative letter attached a merchandise inventory that Cisco, Inc. had prepared on August 31, 1996. The inventory valued Econo's merchandise at $131,423.54. The letter was signed by Mr. Juan Barreto from Econo.

27. Juarbe considered the notification sent to Integrand to be a proof of loss. It was unsworn, and was submitted more than 60 days after September 10, 1996, when the rains from Hurricane

Civil No. 97-2818                                                 8

Hortense flooded Atlantic's warehouse facilities and damaged Econo's merchandise.

28. The Federal Insurance Administrator did not issue Econo an express written consent to waive any of the SFIP's provisions.

29. On November 19, 1996, Atlantic filed a signed and sworn proof of loss with Integrand. Atlantic's proof of loss did not include the loss suffered by Econo for its damaged merchandise stored at Atlantic's warehouse facilities.

30. On December 9, 1996, Integrand issued a check to Atlantic, representing the amount of the loss suffered.

31. On December 12, 1996, Integrand issued a substitute check payable to Atlantic in the amount of $250,144.00. It did not include, nor did it compensate Econo for its claimed property loss. Neither Atlantic nor Cabezas disbursed any compensation to Econo.

### III. Additional Findings of Fact

32. The Chapter 11 Bankruptcy proceedings, filed by Atlantic in 1995, resulted in the transfer of ownership from Atlantic to Tampa Maid Sea Products, the guarantors of the loan acquired for purchase of the Bechara Industrial Park. (See Third Day Trial Transcript at 11-12, 20, 40, 46.)

33. United Cold Storage acquired ownership of the storage facilities from Tampa Maid Sea Products and began issuing invoices to Econo. Additionally, Econo dealt directly with United in the business transactions relating to the storage of Econo's perishable goods.(See Third Day Trial Transcript at 23-25, 40-41, 45, 53).

Civil No. 97-2818                                                            9

34. Although Sergio Morales, Partner of Supermercados Econo, had knowledge of the change of ownership of the Bechara facilities, he never discussed the consequences of ownership change with insurance broker, Mr. Luis Juarbe. (See First Day Trial Transcript at P.81).

35. Integrand had no knowledge of the multiple transactions which resulted in the ownership change.

36. As of September 10, 1996, the day Hurricane Hortense struck the Island, Econo had not yet renewed its policy coverage for the 1996-1997 renewal period. However, Econo preserved its right to recover by renewing its policy coverage on September 12, 1996, within the 30-day grace period found in the policy. (See Second Day Trial Transcript at 61); (See also: Joint Exhibit II and III).

37. As of September 12, 1996, Integrand or Colonial had not eliminated Econo as a loss payee and additional insured under the policy. (See Second Day Trial Transcript at 60-61).

38. On September 18, 1996 Colonial requested Integrand to eliminate Econo as an additional insured under the policy. (See Second Day Trial Transcript at 58);(See also: Joint Exhibit V).

**IV. Remand Instruction**

As indicated by the First Circuit, this Court must make factual and conclusive findings as to the loss payee claim by Econo as well as the claims of nullity and voidness made by Integrand because they were part of the contested issues in the Pretrial

Civil No. 97-2818                                                                 10

Order yet unaddressed by the Court in its intitial judgment in favor of Integrand.  In doing so, the Circuit has recognized that the trial court may still enter judgment in favor of Integrand pursuant to Integrand's claim that the policy in its entirety is null and void because of an alleged misrepresentation or in the alternative find in favor of Econo on the loss payee claim.

In compliance with the Circuit's instructions, the Court thoroughly reviewed the record (testimony and exhibits), as well as the credibility assessment of the testifying witnesses. Accordingly, this Court will now uphold Integrand's claim that the Flood Insurance Policy is null and void because of the material misrepresentations made by Atlantic in its proof of loss claim.

## V. Discussion

This Court's original Judgment barring Econo from recovery was affirmed by the Circuit on the issues of Econo's failure to comply with the 60 day requirement of the SFIP and also the SFIP's exclusion from coverage of bailee's goods.  Thus Econo is barred from bringing an action for damages against Integrand, based on these rejected grounds.  The Court, however, must now determine whether Econo is entitled to recovery as a loss payee beneficiary against Integrand or whether it is barred from such recovery because Integrand's flood insurance policy as a whole is null and void pursuant to the material misrepresentations made by Atlantic on its proof of loss form which also renders its payment to Atlantic a nullity.

Civil No. 97-2818                                                      11

**a.*Nullity and Voidness***

Based on principles of strict compliance established by Congress as construed by the Courts[4] and the parties failure to comply with the black letter terms and conditions of the SFIP in establishing rights to recovery, this Court holds said policy to be null and void with respect to policy claims made on behalf of Atlantic.

Specifically, the Court finds that Integrand has clearly established that Atlantic and its respective agents willfully and negligently misrepresented material disclosures regarding changes in ownership of the Bechara facilities.

   **i. Misrepresentation**

As correctly stated by Integrand in its supplemental brief concerning the loss payee and null and void issues (Docket No.89), a loss payee is subject to any defense on behalf of an Insurer including refusal of payment because of an alleged fraud or misrepresentation. (See 4 Couch on Insurance §§ 65:22 (2004)).

---

[4]Federal law clearly establishes that an insured must strictly comply with the terms and conditions of an insurance policy issued pursuant to a congressionally mandated program. (See Fed. Crop. Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947). The Supreme Court has long held that the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced. (Id. at 385). (See also Wagner v. Dir. FEMA, 847 F.2d 515, 518 (9th Cir. 1988). In Merrill, the Supreme Court recognized a general "duty of all courts to observe the conditions defined by Congress for charging the public treasury." (Merrill, 332 U.S. at 385). Lower courts have uniformly adhered to strict observance of flood insurance policy provisions.

Civil No. 97-2818                                                      12

Pursuant to the plain language of the SFIP, a respective policy is void and of no legal force in the event that

> "<u>any</u> Insured or its agent has sworn falsely or fraudulently or willfully concealed any material facts including...facts relevant in the application for coverage...or renewal of coverage or...in the <u>submission of any claim</u> brought under the policy" (<u>See</u> Voidance Clause Section 8(E)1d(1)-(2)of the SFIP)(Docket No. 36).

When Atlantic submitted its claim to Integrand via the required proof of loss form it failed to disclose changes in ownership as required by the SFIP.[5] Specifically, a question in the upper portion of the standard proof of Loss form, submitted by Atlantic, admitted into evidence and <u>signed</u> by Ernesto Cabezas, reads

> "[N]o other person or persons had any interest therien or incumberances thereon, except (<u>answer space</u>)." (<u>See</u> Defendant's Trial-Exhibit E).

Mr. Cabezas' written answer to that specific question, confirmed by his signature, was an affirmative "<u>none</u>."

In addition to the unambiguous language of the SFIP and

---

[5] Article 8 of the SFIP pertains to the general terms and conditions of the policy. Pursuant to the unambiguous language of section 8(E)(1)c a policy is voided in the event <u>any</u> Insured fraudulently or willfully conceals or misrepresents any material fact in the application for coverage, upon the renewal of coverage or in the <u>submission of any claim</u>. Moreover, pursuant to the unambiguous language of Section 8(O)3g of the SFIP when a flood loss occurs to the insured property and within 60 days the Insured must, <u>inter alia</u>, notify the Insurer in a signed and sworn statement...details of any change in <u>ownership</u>, use, occupancy, location or possession of the insured property since the policy was issued.

Civil No. 97-2818                                                  13

Atlantic's failure to make material disclosures regarding changes in ownership, Cabezas conduct did not comply with the pertinent professional duties and requirements inherent in government programs. (See Jamal v. Travelers Lloyds of Texas, 131 F. Supp. 2d 910 (2001)(where in dicta the Court alluded to the fact that when dealing with government programs one is presumed to know the law and requirements of such programs).

Cabezas' experience and level of business sophistication is a demonstration of his ability to be aware of and comply with the unambiguous provisions of the SFIP. In support of this contention the Court notes that Cabezas was involved in his trade since 1962. He was also was not only a member of the control group of both United and Atlantic, but was also involved in all relevant transactions relating to the transfer of the Bechara facilities, the formation of United, and was also well aware of the prior bankruptcy filings and subsequent foreclosure proceedings transferring title to Tampa Maid.

Therefore, Cabezas' failure to make such disclosures voids the contract precluding Atlantic from recovery, and thereby preventing Econo from any right to recovery from Integrand as a loss payee beneficiary of the policy, assuming that to be the case.

In addition to the strict compliance mandates set out by Congress, the black letter requirements for disclosure set out in 8(O)3g of the SFIP, and equitable considerations based on Cabezas' experience and knowledge of his trade and how it applies to the

Civil No. 97-2818                                                    14

SFIP, this District has, by past precedent, set a low burden for Integrand to meet in defense of this suit. Indeed this Court has specifically indicated a misrepresentation voiding an insurance policy need not be coupled with a specific intent to deceive:

> "[A]n innocent misrepresentation will make the policy *voidable*. That is, the Insurer may avoid the contract when it relies on a misrepresentation of a <u>material</u> fact not only where such misrepresentation is fraudulently made, but also even though it is not fraudulently made. Under this view, in cases where the misrepresentation is positive and of a fact actually <u>material</u>, it is not necessary to prove that the representation was fraudulently made, since the <u>materiality</u> of the misrepresentation, and its proven falsity, do away with the necessity of showing actual fraud. Thus a misrepresentation as to a <u>material</u> fact has the force and effect of a positive fraud. It is <u>not</u> necessary that misrepresentations be made with actual intent to deceive; it is sufficient if they are false [...] It is immaterial that the insured was not guilty of a moral or conscious wrong in making the misstatement, or made the misrepresentation honestly, or through an <u>innocent</u> mistake." (<u>Zogbe v. SMA Life Assurance Co.</u> 837 F.Supp. 472 (D.P.R. 1993)(Footnotes omitted.) (Citing:7 *Couch on Insurance 2d* § 35:119.)

This Court will next discuss whether the misrepresentation made by Cabezas ais material and therefore, causes the policy to become void.

**ii. Materiality**

There is ample basis in law to hold that Cabezas' misrepresentation to be material and cause the flood insurance policy issued by Integrand to be void.

In <u>FDIC v. Underwriters of Lloyd's of London</u>, 3 F.Supp 2d 120

Civil No. 97-2818                                                            15

(D. Mass 1998), the claimant, as in the present case, was precluded from recovery because of a misrepresentation in a surety bond application. In <u>FDIC</u> when defendant was posed with the question on said application: "Please state in detail, any irregularities in banking or financial operations ... known to the Bank during the past 3 years." To this question the bank officials similarly, as in the instant case, answered: "none."

Defendant gave this answer in August 1990 despite being aware of the serious misconduct of two recently-discharged loan officers of the bank, including the unapproved extension of hundreds of thousands of dollars in credit over loan amounts, advances in excess of the officers' lending authority, camouflaged "straw" loans to borrowers via third-party proxies, and egregious deficiencies in loan documentation.

In granting the FDIC's motion the District Court noted that answering "none" to the posed question, under the above circumstances, is analogous to submitting an application for fire insurance without telling the carrier that the kitchen is already in flames. (<u>Id</u>. at 123). The Court noted that the defendant had failed to make relevant disclosures in the application related to a federally funded insurance fidelity bond program. The disclosure was found to be material, thereby triggering the full force and effect of the misrepresentation in rendering the bond void.

Similarly, here, this Court holds the misrepresentation to be

Civil No. 97-2818                                                        16

material. Although, the misrepresentation in FDIC was made on an initial application for coverage under an FDIC program and the misrepresentation here was made on a proof of loss form in a flood insurance program there is a basis for applying the reasoning and facts in FDIC to the instant case, in finding the misrepresentation to be material.

First, both programs are mandated and subsidized by the federal government and occurrences of improper conduct by way of misrepresented facts may ultimately place a burden on the U.S. tax payer and result in a direct charge on the U.S. treasury. See Newton v. Capital Assurance Co., 245 F.3d 1306, 1311 (11th Cir.2001)(stressing the significance and societal implications in relating to claim payments; see also 44 C.F.R. § 62.23(f)).

Secondly, in both FDIC and the instant case, the defendants answered an affirmative "none" when asked a direct question about past occurrences, and, in both instances the responses amounted to misrepresentations.

Additionally, the black letter language of the SFIP clearly prohibits misrepresentations in applications for coverage, renewals of coverage, or, in connection with the submission of any claim. (See Section 8E1c(2) of the SFIP). And, although in FDIC the decision was based on interpretation of Massachusetts contract law, it also entailed a prohibition similar to the one that the SFIP seeks to prevent, that is, a misrepresentation in an application

Civil No. 97-2818                                                          17

for coverage.

Therefore, in the interests of justice, deterrence, and to ensure the uniformity of decisions in furtherance of programs controlled by the Federal government and the persuasive thrust of the FDIC case, this Court voids the flood insurance policy in this case. (See West v. Harris, 573 F.2d 873, 881 (5th Cir 1978)(holding that "[s]ince the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope," the uniformity of decisions must be assured and courts motu propio should not create exceptions).

For the reasons stated above, Cabezas' material misrepresentation made to Integrand void the SFIP and bar Atlantic's right to recover. Additionally, and for the reasons to be discussed bellow this nullity precludes Econo from recovering as a loss payee.

**b. Preclusion of Loss Payee Claim**

As correctly stated by Econo in its Brief to this Court, a loss payee under an insurance policy is a party designated to receive payment should the named insured prevail on its claim. (See Docket No. 90). A loss payee recovers to the extent the named insured recovers. See John Appleman, Insurance Law & Practice, §3335 (1979). Moreover, as cited in Econo's own brief: "[a] loss payee may only recover if the insured could have recovered." See Black's Law Dictionary 958 (7th ed. 1999).

Civil No. 97-2818                                                      18

In the present case, Atlantic's recovery was based upon the misrepresentation of a material fact in the proof of loss form, related to the multiple changes in ownership of the Bechara warehouse facility. This failure to disclose precludes Atlantic's recovery under the SFIP from Integrand. To the same extent, Atlantic's bar from recovery also prevents any loss payee claim by Econo, given that a loss payee may only recover to the extent the insured can recover.

## VI. CONCLUSION

Pursuant to the First Circuit mandate concerning additional findings of fact and conclusions of law without foreclosing a change in the ultimate resolution of the case, the Court finds that the September 25, 1996 Flood insurance policy, as renewed, issued by Integrand to Atlantic is null and void. Accordingly, Econo's loss-payee claim cannot prosper. The nullity of the policy means that Integrand could be entitled to recover the payment wrongfully made to Atlantic or Cabezas. Integrand, however, has not filed a cross-claim against Atlantic or Cabezas to recover the money improperly paid. It remains free, however, to do so in any separate proceeding it may choose to file in state court.

In light of the aforementioned, Econo's dismissal of all claims against defendant Integrand will be reaffirmed through the entry of an Amended Judgment reflecting dismissal of Econo's claims as a loss payee in Intergrand's insurance policy. Otherwise, the

Civil No. 97-2818                                                            19

Court's original judgment is hereby reaffirmed in all respects.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 8th day of March, 2005.

                                <u>S/ Jay A. Garcia-Gregory</u>
                                JAY A. GARCIA-GREGORY
                                U.S. DISTRICT JUDGE